UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSTRONG WORLD INDUSTRIES, INC., <br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 02-CV-4360 |

**RESPONSE OF LIBERTY MUTUAL TO ARMSTRONG'S MOTION FOR
LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Defendant Liberty Mutual Insurance Company hereby responds to the Motion Of Armstrong World Industries, Inc. For Leave To File A First Amended Complaint. As detailed below, Liberty Mutual disagrees with Armstrong's asserted justification for amending the complaint to place before the Court in this case all coverage issues regarding the 1977-1981 insurance policies. Nonetheless, Liberty Mutual agrees that all such coverage issues should be before the Court in this case and, thus, assents to the motion to amend.

Armstrong says that the complaint should be amended "[a]s a precautionary measure" to put all issues regarding insurance coverage under 1977-1981 policies before the Court, because of a recent Appellate Arbitration Award in favor of Liberty Mutual. In reality, the Appellate Arbitration Award did not change the necessary scope of the litigation concerning the 1977-1981 policies, because the parties long ago agreed that they would litigate issues related to those policies. Liberty Mutual issued general liability insurance policies to Armstrong for nine years, from 1973 through 1981. There

1

exists a major dispute between Armstrong and Liberty Mutual about the extent of insurance coverage afforded by those policies to Armstrong for the asbestos-related bodily injury claims against Armstrong arising from Armstrong's historical asbestos insulation installation activities.

In 1985, Armstrong and Liberty Mutual, along with other manufacturers and insurers, signed the Wellington Agreement, which resolved certain disputes among the parties concerning insurance coverage for asbestos bodily injury claims.[1]  The claims were to be paid by insurance policies designated by each manufacturer for its "coverage block."  Armstrong designated the four 1973-1976 Liberty Mutual policies as its "coverage block," and these policies coincidently were designated as so-called "pre-date" policies under Wellington.  The five 1977-1981 Liberty Mutual policies were "post-date" policies, not in the "coverage block."  Wellington provided for binding arbitration to resolve disputes regarding the "pre-date" policies.  Resolution of disputes regarding the "post-date" policies such as the 1977-1981 policies was expressly left to litigation.

Liberty Mutual paid more than $4 million in indemnity and defense costs for Armstrong's asbestos claims under the four 1973-1976 "coverage block" policies.  But Liberty Mutual consistently took the position that its policies, which were not issued until years after Armstrong had completed its asbestos insulation installation operations, did not provide additional coverage beyond the amounts it had already paid for claims arising from those historical operations.  In 1996, Armstrong initiated an arbitration under the Wellington Agreement, seeking additional coverage for its historical asbestos insulation

---

[1] In its motion papers, Armstrong references the Wellington Agreement, notes that it has filed a copy of that Agreement with the Court as PX 1 in the case captioned *Armstrong World Industries, Inc. v. Liberty Mutual Ins. Co.*, No. 04-CV-0499 (E.D. Pa.), and offers to file a copy of that Agreement in this case if the Court prefers.

installation claims under the 1973-1976 policies. On July 30, 2003, an Appellate Arbitration Panel comprised of three former federal judges unanimously ruled that Armstrong's claim for further coverage under the 1973-1976 policies was barred in its entirety by the statute of limitations, because Armstrong had waited more than a decade after first asserting that claim in 1985 until initiating its arbitration in 1996.

During the pendency of the arbitration regarding the 1973-1976 policies, Armstrong in 2002 filed the present case in this Court, raising certain selected issues about insurance coverage for its historical asbestos insulation installation claims under the 1977-1981 policies. After the complaint was filed, Liberty Mutual desired to add additional issues to the case by way of counterclaims, so that all pertinent issues concerning the 1977-1981 policies would be before the Court in this case. Because Armstrong was in bankruptcy, Liberty Mutual needed permission from the Bankruptcy Court to bring those counterclaims. Armstrong opposed Liberty Mutual's motion in the bankruptcy case to lift the bankruptcy stay in order to permit Liberty Mutual to file its counterclaims in this case. Ultimately, Liberty Mutual and Armstrong reached an agreement, which this Court has approved, to allow Liberty Mutual to file its counterclaims after Armstrong's bankruptcy reorganization plan becomes effective.

Armstrong now asserts that it must amend its complaint to put before this Court additional coverage issues concerning the 1977-1981 policies because the Appellate Arbitration Award recently reversed in favor of Liberty Mutual certain findings of the trial-level arbitrator regarding the 1973-1976 policies. That theory is wrong, because the arbitration as to the 1973–1976 policies did not eliminate the potential need to litigate any issues that might arise concerning the 1977-1981 policies. The Wellington Agreement

expressly provides that disputes regarding "post date" policies such as the 1977-1981 Liberty Mutual policies "shall" be resolved, ultimately, by "litigation." Wellington Agreement, Art. XVI.B.1, Art. XVII.B. Thus, Armstrong's present motion, seeking to broaden its complaint in this case to encompass a general declaration of the parties' rights under the 1977-1981 policies (*see* Count VI in the proposed Amended Complaint), is appropriate, albeit based on a flawed contention by Armstrong that its need to amend somehow was dependent on the outcome of the arbitration proceeding concerning the 1973-1976 pre-date policies.

If Armstrong had conferred with Liberty Mutual prior to filing its motion to amend, Armstrong could have filed it as uncontested pursuant to Local Rule 7.1(b). Armstrong having proceeded to file the motion, Liberty Mutual now assents to it.

Respectfully submitted,

LIBERTY MUTUAL
INSURANCE COMPANY

By its attorneys,

_____

Edward F. Mannino
Jason A. Snyderman
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA  19103
(215) 965-1229

and

A. Hugh Scott
John A. Nadas
Gregg D. Shapiro
Choate, Hall & Stewart
53 State Street
Boston, MA 02109
(617) 248-5000

4

and

Gerald V. Weigle, Jr.
Dinsmore & Shohl
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8251

5

## CERTIFICATE OF SERVICE

I, Jason A. Snyderman, Esquire, hereby certify that on March 1, 2004, a true and correct copy of the Response to Liberty Mutual to Armstrong's Motion for Leave to File a First Amended Complaint was served on the following:

### VIA HAND DELIVERY

Howard M. Klein, Esquire
Frank Emmerich, Esquire
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102-1916

### VIA REGULAR FIRST-CLASS MAIL

William P. Skinner, Esquire
S. William Livingston, Esquire
Philip E. Dubé, Esquire
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004

_____
Jason A. Snyderman