IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Armstrong World Industries, Inc.<br>2500 Columbia Avenue<br>Lancaster, PA 17603,<br><br>      Plaintiff,<br><br>v.<br><br>Liberty Mutual Insurance Company,<br>175 Berkeley Street<br>Boston, MA 02116<br><br>      Defendant. | Civil Action No. 02-CV-4360 |

**FIRST AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT AND DAMAGES**

1.  Armstrong World Industries, Inc. ("AWI") brings this amended complaint for the purpose of obtaining an award of damages and a declaration of its rights to coverage for asbestos-related bodily injury claims under primary comprehensive general liability insurance policies sold to AWI by Liberty Mutual Insurance Company ("Liberty Mutual") with policy periods for the calendar years 1977 through 1981 (the "1977-1981 policies").

**The Parties**

2.  AWI is a Pennsylvania corporation with its principal place of business in Lancaster, Pennsylvania.

3.  Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

### Jurisdiction and Venue

4.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.  There is an actual controversy between AWI and Liberty Mutual with respect to AWI's rights to coverage for asbestos-related bodily injury claims under the 1977-1981 Policies.

6.  Liberty Mutual is licensed to transact business in Pennsylvania, transacts business in Pennsylvania, delivered the 1977-1981 policies to AWI in Pennsylvania, and is subject to personal jurisdiction in Pennsylvania.

7.  Venue in this judicial district is appropriate under 28 U.S.C. § 1391.

### Background

8.  AWI has been named as a defendant in more than 500,000 claims seeking damages for injuries allegedly caused by exposure to asbestos. A large majority of the amount that AWI has paid in connection with the defense and settlement of these claims -- in excess of 70 percent -- is attributable to alleged exposure to asbestos fibers released when AWI was installing asbestos-containing pipe and boiler insulation manufactured by other companies during the period from approximately 1939 to 1958 or when ACandS, Inc., a former subsidiary of AWI that was formerly known as Armstrong Contracting and Supply Corporation, was installing asbestos-containing pipe and boiler insulation during the period from approximately 1958 to 1969. A small percentage of the claims is based on alleged exposure to asbestos released from pipe and boiler insulation sold by AWI to third parties for installation by them (AWI installed more than 90 percent of the asbestos-containing pipe and boiler insulation that it sold), or on

alleged exposure to asbestos released from non-insulation products manufactured and sold, but not installed, by AWI.

9.   On December 6, 2000, AWI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  AWI's chapter 11 case is pending under the caption *In re Armstrong World Industries, Inc., et al. Debtors,* Chapter 11 Case No. 00-4471 (JKF) (Jointly Administered).

10. Liberty Mutual sold AWI primary comprehensive general liability policies with policy periods for the calendar years 1973 through 1981 that provide coverage for both asbestos-related bodily injury and property damage claims.  Both AWI and Liberty Mutual have copies of these policies.

11. AWI has been litigating or arbitrating disputes about insurance coverage for asbestos-related claims with Liberty Mutual on a continuous basis since March 6, 1980, when AWI filed a complaint against Liberty Mutual and other insurers in state court in California.  That complaint, as later amended, sought coverage for both asbestos-related bodily injury and property damage claims.

12. On June 19, 1985, AWI and Liberty Mutual became parties, along with many other insurers and policyholders, to the Agreement Concerning Asbestos-Related Claims.  That settlement agreement is commonly referred to as the Wellington Agreement because it was negotiated with the assistance of Harry Wellington, who was Dean of the Yale Law School at the time.  The Wellington Agreement resolved many, but not all, of the issues relevant to coverage for asbestos-related bodily injury claims under the insurance policies that Liberty Mutual had issued to AWI for the period from 1973 through 1981.

13. As a result of the Wellington Agreement, AWI dismissed its California complaint against Liberty Mutual with respect to coverage for asbestos-related bodily injury claims. AWI continued to litigate questions of coverage for asbestos-related bodily injury claims against other insurers in California, and questions of coverage for asbestos-related property damage claims against Liberty Mutual and others until those issues were finally resolved by the California courts in 1996 in *Armstrong World Industries, Inc. v. Aetna Casualty & Surety, Co.,* 52 Cal. Rptr. 2d 690 (Ct. App. 1996).

14. Each of the policies that Liberty Mutual issued to AWI for the period from 1973 through 1981 contains a per occurrence and an aggregate limit for bodily injury claims in the amount of $1,000,000. As the policies were originally written, the aggregate limits applicable to bodily injury claims apply only to claims within the "products hazard" or the "completed operations hazard" as those terms are defined in the policies. Other types of bodily injury claims are not subject to aggregate limits.

15. Each of the policies that Liberty Mutual issued to AWI for the period from 1977 through 1981 contains a "per person" deductible for asbestos-related bodily injury claims that fall within the "products hazard" or the "completed operations hazard" as those terms are defined in the policies. Other types of asbestos-related bodily injury claims are not subject to the deductible.

16. Under the 1977-1980 policies, the deductible is $50,000 per person and applies both to damages and allocated loss adjustment expenses (defense costs). There is no aggregate limit to the amount of damages or defense costs that is subject to the deductible under these policies, and amounts paid under the deductible do not reduce the aggregate limits of the policies.

17. Under the 1981 policy, the deductible is $100,000 per person and applies to both damages and allocated loss adjustment expenses. There is a $2,000,000 aggregate limit on the total amount of damages within the deductible (defense costs do not count against this limit). Payments of damages within the deductible do not reduce the aggregate limit of the policy.

18. The 1977-1981 policies define the "products hazard" as follows:

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

19. The 1977-1981 policies define the "completed operations hazard" in relevant part as follows:

"Completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.

. . .

The completed operations hazard does not include bodily injury or property damage arising out of

. . .

(b)    the existence of tools, uninstalled equipment or abandoned or unused materials . . . .

20. Claims that are within the products hazard or the completed operations hazard are commonly referred to as "products claims." Claims that are not within the products or completed operations hazards are referred to variously as "general liability claims," "premises/operations claims," or "non-products claims." Liberty Mutual and AWI have most

often referred to such claims as "non-products claims," and that is the term that is used in this complaint.

21. Non-products claims include claims that are based on alleged exposure to asbestos fibers released when AWI was installing asbestos-containing pipe and boiler insulation during the period from approximately 1939 to 1958 or when ACandS, Inc., a former subsidiary of AWI that was formerly known as Armstrong Contracting and Supply Corporation, was installing asbestos-containing pipe and boiler insulation during the period from approximately 1958 to 1969. Claims arising out of exposure to asbestos released when insulation was being installed by Armstrong or its former subsidiary are not "products hazard" claims because, at the time of the exposure that caused the initial injury, Armstrong or its subsidiary still had possession of the insulation. Such claims are also not "completed operations" claims because, at the time of the exposure which caused the initial injury, the operation of installing the insulation had not yet been completed. This interpretation of the policies is supported by their language, the consistent custom and practice of Liberty Mutual and other insurers, the function of the "hazard concept" in insurance, and applicable law.

22. Under the Wellington Agreement, aggregate limits are imputed for policies issued prior to a specified date ("pre-date policies") that were originally written without aggregate limits for non-products claims. These imputed limits are equal to ten times the per occurrence limits of such policies. Wellington Agreement, Section XVII.A. No such limits are imputed for policies issued after the specified date ("post-date policies"). The Wellington Agreement provides: "Post-date insurance policies without aggregate limits shall apply as written." Wellington Agreement, Section XVII.B.

23. The Wellington Agreement also provides that deductibles in post-date policies shall apply "as written." Wellington Agreement, Section XVI.B.

24. For AWI, the date that distinguishes pre-date from post-date policies under the Wellington Agreement is January 1, 1977. Accordingly, the 1977-1981 policies are post-date policies as that term is used in the Wellington Agreement. That means that those policies apply as written, *i.e.*, they have no aggregate limit and no deductible for non-products asbestos-related bodily injury claims.

25. There is a dispute between AWI and Liberty Mutual concerning the extent to which past, present and future damages and defense payments made by or on behalf of AWI in connection with asbestos-related bodily injury claims should be classified as products or non-products payments under the 1973-1981 Liberty Mutual policies.

26. Section XXII of the Wellington Agreement provides that all "disputes concerning the validity, interpretation and application of the Agreement and the appendices hereto, or any provision hereof, and all disputes concerning issues within the scope of the Agreement" shall be resolved by an alternative dispute resolution ("ADR") process in accordance with rules set forth in Appendix C to the Wellington Agreement. Some disputes are subject to binding ADR under the Wellington Agreement. Other disputes are subject to non-binding ADR followed by litigation.

27. On April 23, 1996, AWI commenced an ADR under the Wellington Agreement against Liberty Mutual and certain other insurers for the purpose of resolving disputes about coverage for products and non-products asbestos bodily injury claims (the "Non-Products ADR"). In the Non-Products ADR, AWI made clear that it was seeking relief with respect to both the pre-date and the post-date Liberty Mutual policies.

28. On February 26, 1999, the Honorable Nicholas J. Bua, a former federal district court judge who was then serving as the trial judge in the Non-Products ADR, issued a Phase I Decision. That Decision concluded, among other things, that 74 percent of the amounts paid for asbestos bodily injury claims against AWI that had been resolved through September 30, 1996 should be classified as non-products amounts under Liberty Mutual's policies, and rejected all of the defenses that Liberty Mutual had asserted to AWI's claims for such coverage.

29. On January 29, 2002, the Honorable Charles Renfrew, a former federal district court judge who served as the successor trial judge in the Non-Products ADR, issued Findings of Fact and Conclusions of Law for Phase III and Final Judgment with respect to issues in the Non-Products ADR that are subject to binding ADR (the "Final Judgment"). The Final Judgment incorporates the Phase I Decision and, among other things, grants AWI declaratory relief with respect to both the pre-date and post-date Liberty Mutual policies.

30. On February 6, 2002, Liberty Mutual filed a notice of appeal from certain aspects of the Final Judgment. The Wellington Agreement provides, with respect to issues that are subject to binding ADR, that a decision by an arbitrator who is serving as the trial judge may be appealed to a three-member appellate panel of arbitrators.

31. On July 30, 2003, the Appellate Arbitrators issued an Appellate Arbitration Award that reversed the Final Judgment on grounds that AWI's claims against Liberty Mutual under the policies that were issued for the period from January 1, 1973 to January 1, 1977 are barred by the Pennsylvania statute of limitations. On January 20, 2004, the Appellate Arbitrators issued an order that denied AWI's application for rehearing of the Appellate Arbitration Award.

32. On February 4, 2004, AWI filed a motion to vacate the Appellate Arbitration Award on grounds that the Appellate Arbitrators had exceeded their powers under 9 U.S.C. § 10

Case 2:02-cv-04360-RBS    Document 28    Filed 04/05/2004    Page 9 of 23

- 9 -

(a)(4) and manifestly disregarded applicable law in *Armstrong World Industries, Inc. v. Liberty Mutual Insurance Co.*, No. 04-CV-499.

33. In its motion to vacate the Appellate Arbitration Award, AWI seeks, among other things, confirmation of the Final Judgment that was entered on January 29, 2002 at the conclusion of the Trial Phase of the ADR between AWI and Liberty Mutual under the Wellington Agreement. AWI believes that Final Judgment properly declares certain of its rights under the Liberty Mutual policies that were issued for the period from January 1, 1977 to January 1, 1982.

34. If the Appellate Arbitration Award is not vacated, and/or Final Judgment is not confirmed, it may be necessary for AWI to seek in this action a declaration of its rights with respect to coverage for asbestos-related bodily injury claims under the Liberty Mutual policies that were issued for the period from January 1, 1977 to January 1, 1982, including a declaration of rights with respect to issues that were resolved in AWI's favor and against Liberty Mutual in the Final Judgment.

35. During the course of the Non-Products ADR, Liberty Mutual asserted for the first time on July 17, 1998 that the deductibles in its post-date policies should be reformed to make them apply to both products and non-products asbestos-related bodily injury claims even though, as written, the deductibles apply only to products claims. Liberty Mutual asserted for the first time on October 12, 2001 that its 1981 policy should be reformed to include an aggregate limit for asbestos-related non-products claims even though, as written, that policy has no aggregate limit for non-products claims. Liberty Mutual asserted for the first time on February 13, 2002 that its 1977 through 1980 policies should also be reformed to include an aggregate

limit for asbestos-related non-products claims even though, as written, those policies have no aggregate limits for non-products claims.

36. Liberty Mutual and AWI have agreed that these reformation claims are subject to non-binding ADR under the Wellington Agreement. On February 13, 2002, the Honorable Charles Renfrew delivered an oral, non-binding advisory opinion with respect to Liberty Mutual's reformation claims. On July 1, 2002, the parties participated in a final negotiation session with Judge Renfrew pursuant to Rule 10.A5 of the Wellington ADR rules. A settlement was not achieved at that session which is now over. Rule 10.A6 of the Wellington ADR rules provides: "If settlement is not achieved at the final negotiation session, the Parties proceed to litigation." AWI filed its original complaint in this action on July 1, 2002 in accordance with that rule.

37. While the ADR was pending, Liberty Mutual informed AWI that there were other disputed issues with respect to coverage for products and non-products claims under the 1977-1981 policies. Liberty Mutual sought no rulings concerning these other issues in either the binding or the non-binding portion of the Non-Products ADR. AWI seeks rulings in this case with respect to these other issues, identified in Counts II-IV, below. Liberty Mutual has waived whatever right it might otherwise have had to submit these issues to ADR under the Wellington Agreement. In addition, ADR of such issues would be futile because Liberty Mutual takes the position that such issues are subject to non-binding ADR under the Wellington Agreement so that a final resolution of these issues can only be achieved through litigation in any event.

### Count I -- Liberty Mutual's Reformation Claims

38. Paragraphs 1-37 are incorporated by reference.

39. Liberty Mutual has asserted that it is entitled to obtain reformation of the deductible and aggregate limit provisions of its 1977-1981 policies on grounds of mutual mistake.

40. There was no mutual mistake with respect to facts in existence at the time that the 1977-1981 policies were issued that would justify reformation of either the deductible or the aggregate limit provisions of any or all of those policies.

41. AWI informed Liberty Mutual of its view that there were a substantial number of non-products asbestos-related bodily injury claims in 1984 and 1985, before the Wellington Agreement was executed. Liberty Mutual expressly waived its reformation claims when it executed the Wellington Agreement. Moreover, Liberty Mutual expressly promised in the Wellington Agreement, and in a related document executed by Liberty Mutual on July 9, 1985, that the deductibles and limits of its 1977-1981 policies would apply "as written" only to products claims.

42. Under Section VIII.5 of the Wellington Agreement, Liberty Mutual expressly waived all coverage defenses that were not set forth in Appendix B to the Wellington Agreement. Reformation is not a defense that is preserved in Appendix B to the Wellington Agreement.

43. Under Section XVI.B.1 of the Wellington Agreement, Liberty Mutual expressly agreed that the deductibles in its post-date policies "shall apply as written."

44. Under Section XVII.B of the Wellington Agreement, Liberty Mutual expressly agreed that "Post-date insurance policies without aggregate limits shall apply as written."

45. In a notarized document that was executed by an authorized claims manager of Liberty Mutual on July 9, 1985, Liberty Mutual expressly stated its position that, with respect to post-date policies, "all terms of the insurance policies relating to deductibles . . . shall be applicable, due and owing in accordance with the terms of the insurance policies . . . as written." That same document expressly stated that the aggregate limits of the 1981 policy applicable to asbestos-related bodily injury claims applied only to products claims.

46. Liberty Mutual's reformation claims lack merit or foundation and are also barred by the doctrines of laches, waiver and estoppel.

47. Accordingly, Liberty Mutual is not entitled to reformation of either the deductible or the aggregate limit provisions of the 1977-1981 policies, and there is no deductible or aggregate limit in those policies that applies to non-products asbestos-related bodily injury claims.

### Count II -- Number of Occurrences

48. Paragraphs 1-47 are incorporated by reference.

49. Throughout the time prior to June 19, 1985 that Liberty Mutual was defending and settling asbestos-related bodily injury claims against AWI, it followed a consistent practice of treating each such claim on behalf of each individual person as a separate occurrence.

50. During the course of discovery in the California coverage litigation between AWI and Liberty Mutual, Peter Shea, the claims manager responsible for coordinating all asbestos-related bodily injury claims for Liberty Mutual, testified on October 12, 1983, that, for purposes of the per occurrence limit, Liberty Mutual took the position that each claim filed on behalf of an individual constituted a separate occurrence (Shea California Deposition Transcript, p. 249-51).

51. On June 19, 1985, the same day that the Wellington Agreement was executed, an authorized representative of Liberty Mutual and an authorized representative of AWI agreed orally to the text of a written statement drafted by Liberty Mutual that stated that "each asbestos claim would be treated as a separate occurrence."

52. During the course of the Non-Products ADR between AWI and Liberty Mutual, insurers other than Liberty Mutual took the position that all asbestos-related bodily injury claims constituted a single occurrence, and that their coverage obligations were limited accordingly. AWI sought discovery in 1997 concerning the positions that each of the insurers had taken on that question in the past with respect to AWI and other policyholders. Liberty Mutual refused to provide discovery on this topic on grounds that there was no dispute between AWI and Liberty Mutual on this question, and successfully resisted a motion to compel on the same grounds, expressly referring to the June 19, 1985 agreement that "each asbestos claim would be treated as a separate occurrence."

53. On December 21, 2001, Liberty Mutual informed AWI for the first time that it might take the position that all asbestos-related bodily injury claims against AWI arise out of a single occurrence.

54. On May 2, 2002, Liberty Mutual informed AWI that it was taking the position that all asbestos-related bodily injury claims against AWI arise out of a single occurrence.

55. AWI seeks a declaration that, under the 1977-1981 policies, for purposes of the per occurrence limits of those policies, there is a separate occurrence with respect to each individual person who makes a claim alleging asbestos-related bodily injuries. That is a reasonable interpretation of the relevant language of the 1977-1981 policies, and Liberty Mutual

is precluded from taking a different position as a result of its express agreements and the course of conduct described above.

### Count III -- AWI's Expansion Of Its Coverage Block For Non-Products Amounts

56. Paragraphs 1-55 are incorporated by reference.

57. Under the Wellington Agreement, defense costs and liability payments incurred in connection with claims against AWI are allocated to insurance policies in AWI's "coverage block," which is a defined term in the Wellington Agreement. Wellington Agreement, Section IX.1. Prior to July 13, 2000, the coverage block for AWI ended on December 31, 1976.

58. On July 13, 2000, AWI sent a letter to Liberty Mutual that stated:

> Armstrong hereby informs you that, effective upon the exhaustion of the non-products coverage in its current coverage block provided by Liberty Mutual, Armstrong expands the coverage block for amounts allocable to the non-products classification by one full year so that such coverage block would end on December 31, 1977.

59. The July 13, 2000 letter from AWI also stated:

> In the alternative, in the event that the parties should later agree or that it should later be established through ADR or otherwise that Armstrong is obligated by the Wellington Agreement to expand its coverage block on a date certain rather than on a date that is contingent upon the exhaustion of the non-products coverage in the current coverage block afforded under the Liberty Mutual policies as set forth above, Armstrong hereby informs you that effective on the date of this letter Armstrong expands its coverage block for amounts allocable to the non-products classification by one full year so that such coverage block would end on December 31, 1977.

60. The date of exhaustion of the non-products coverage in Liberty Mutual's pre-date policies is currently uncertain. If the Appellate Arbitration Award is not vacated, AWI will not be entitled to any non-products coverage for asbestos-related bodily injury claims under Liberty Mutual's pre-date policies.

61. On July 25, 2000, Liberty Mutual responded to AWI's July 13, 2000 letter with a letter that stated: "Liberty Mutual disagrees with the positions taken in that letter." On the same day, Liberty Mutual filed a demand for ADR under the Wellington Agreement with the CPR Institute For Dispute Resolution which stated that "Liberty Mutual disputes that Armstrong can expand its coverage block in the manner it purports to do in the July 13 letter, and Liberty disputes that the July 13 letter is effective to expand Armstrong's coverage block (or as notice of Armstrong's intention to do so). Armstrong's attempt to expand its coverage block as stated in the July 13 letter is ineffective and violates the Wellington Agreement."

62. On January 24, 2001, Liberty Mutual sent a letter to the CPR requesting that its request for ADR be held in abeyance based on Liberty Mutual's understanding that, because Liberty Mutual was the initiating party, that ADR could not go forward consistent with the automatic stay provisions of the U.S. Bankruptcy Code.

63. At no time has Liberty Mutual ever given AWI any explanation of Liberty Mutual's reasons for disagreeing with the positions taken in AWI's July 13, 2000 letter, or of Liberty Mutual's reasons for disputing that AWI can expand its coverage block in the manner set forth in that letter.

64. AWI seeks a declaration that it is entitled to expand its coverage block in the manner set forth in Paragraph 58, above. In the alternative, AWI seeks a ruling that it is entitled to expand its coverage block in the manner set forth in Paragraph 59, above. In the further alternative, AWI seeks a ruling that its coverage block was expanded, effective July 13, 2000 or such other date as may be determined by the Court to be appropriate, to include the Liberty Mutual policy issued for the calendar year 1977 with respect to all asbestos-related bodily injury claims.

65. AWI also seeks a declaration that Liberty Mutual is precluded from disputing AWI's right to expand its coverage block in the manner set forth in Paragraphs 58, 59 and 64 above, as a result of its failure to provide any explanation for its position. AWI has been prejudiced by Liberty Mutual's failure to provide reasons for its position because, if Liberty Mutual had provided such reasons, AWI might have been able to cure whatever defect (if any) there was in its July 13, 2000 letter.

**Count IV -- Additional Premium For Asbestos Claims Under the 1977-1978 Policies**

66. Paragraphs 1-65 are incorporated by reference.

67. The 1977-1978 policies are retrospectively rated. That means that the amount of premium that is required to be paid under the policies is affected, at least to some extent, by losses under those policies and under other policies (*i.e.*, workers compensation and automobile liability policies) issued to AWI by Liberty Mutual for the periods 1976 through 1978.

68. Endorsement No. 1A to the 1976 policy defines the Final Retrospective Premium applicable to the 1976-1978 policies as consisting of "premium computed in accordance with the provisions of the following retrospective rating agreement, subject to the maximum and minimum retrospective premiums, plus the discounted Excess Premium." Part I of the endorsement identifies the coverages that are included in the plan (workers compensation, general liability and automobile liability). Part II provides that the plan applies to the 1976-1978 policies. Part III defines terms used in the computation of the retrospective premium. Part IV sets out the Retrospective Rating Formula and Part V defines the excess premiums.

69. The 1977 policy was endorsed, effective January 1, 1977, to replace Part V of the endorsement to the 1976 policy with a new section called "Additional Premium" and included an item for "Expense on Asbestosis Claims." This premium was stated to be: "Premium produced by applying a rate of $.35 to paid loss for bodily injury caused by asbestos

either alone or in combination with other substances." 1977 Policy, Endorsement No. 1A. The same endorsement also applied to the 1978 policy.

70. Part VI of Endorsement No. 1 to the 1976 policy, which was not modified in the 1977 or the 1978 policies, set forth terms relating to the dates on which retrospective premium could be calculated and stated: "Subsequent computation shall be made at intervals of twelve months, subject to a similar procedure until a final adjustment is mutually agreed upon by the insured and the company."

71. With respect to the 1976-1978 policies, there has been a final adjustment of the Final Retrospective Premium and no further retrospective premium, including without limitation any premium for expense on asbestos-related bodily injury claims, will be owed under those policies even if additional losses are paid under those policies. On April 20, 1998, Liberty Mutual sent a letter to AWI that confirmed this fact and stated: "The 1973 through 1978 plan years are closed out. Essentially this means that Armstrong has no liability for any changes or losses from that time period."

72. Accordingly, AWI seeks a declaration that Liberty Mutual is precluded from seeking any additional premium or other payments under the 1977 and 1978 policies. In the alternative, AWI seeks a declaration that Liberty Mutual's rights with respect to additional premium under the 1977 and 1978 policies are limited in the manner alleged in Count V, below.

**Count V -- Additional Premium For Asbestos Claims Under The 1977-1981 Policies**

73. Paragraphs 1-72 are incorporated by reference.

74. The 1979 policy was endorsed to provide for an "Excess Premium" called "Expense on Asbestosis Claims." This premium was stated to be: "Premium produced by applying a rate of $.35 to paid loss for bodily injury caused by asbestos either alone or in combination with other substances. Such premium is subject to an annual minimum of $150,000

- 18 -

for the first two adjustments of any policy term." Endorsement No. 1A. The same endorsement applied to the 1980 policy.

75. As used in the retrospective premium endorsements applicable to the 1977-1980 policies, the term "paid loss" refers to settlement or damages amounts paid by Liberty Mutual to third parties for the purpose of resolving claims against AWI, and does not include defense costs.

76. The 1981 Liberty Mutual general liability policy was endorsed to provide for an "Expense Premium on Asbestos Claims." The premium was stated as follows:

> Premium produced by applying the following "net" factors to the paid deductible losses for bodily injury caused by asbestos, either alone or in combination with other substances. Such premium is subject to an annual minimum of $150,000 for the first two adjustments of any policy term.

| Total Loss incl. allocated expenses | | "Net Factor" |
|---|---|---|
| 1st | 500,000 | .35 |
| Next | 500,000 | .25 |
| Next | 1,000,000 | .20 |
| Over | 2,000,000 | .15 |

Endorsement No. 1A, Part VI.

77. As used in the endorsement applicable to the 1981 policy "paid deductible losses" refers to amounts paid by Liberty Mutual that are subject to the deductible in that policy. As pointed out above, that deductible applies only to products claims.

78. AWI seeks a declaration that:

(a) Under the 1977-1981 policies, Liberty Mutual has no right to collect additional or excess premium for asbestos-related claims based on amounts that it has not paid.

(b) Under the 1977-1981 policies, AWI has no obligation to request coverage from Liberty Mutual for any amounts paid in connection with asbestos-related bodily injury products claims, and Liberty Mutual has no right to pay any amounts in connection with asbestos-related bodily injury products claims in the absence of a request from AWI for coverage for such amounts.

(c) In particular, Liberty Mutual has no right to insist on paying amounts for asbestos-related products claims that are within the deductibles applicable to the 1977-1981 policies so that it can obtain reimbursement from AWI of the total amount paid within the deductibles plus a further payment from AWI equal to 35 percent of the amount of the liability payment (in the case of the 1977-1980 policies), or the applicable percentage of the sum of the defense and liability payments set forth in Paragraph 76 (with respect to the 1981 policy).

(d) Under the 1981 policy, Liberty Mutual has no right to collect any "Expense Premium on Asbestos Claims" in connection with payments made for non-products asbestos-related bodily injury claims.

79. Liberty Mutual has informed AWI that it does not agree with AWI's position on these issues and that there is therefore a dispute about these matters.

## Count VI -- Declaration of Additional Rights Under the 1977-1981 Policies

80. Paragraphs 1-79 are incorporated by reference.

81. AWI seeks a declaration of its rights under the 1977-1981 policies with respect to coverage for asbestos-related bodily injury claims, including but not limited to its rights with respect to issues that were addressed in the Final Judgment issued at the conclusion of the trial phase of the Non-Products ADR.

### Count VII -- Damages Under the 1977 Policy

82. Paragraphs 1-81 are incorporated by reference.

83. Liberty Mutual has breached its obligation to provide insurance coverage to AWI for asbestos-related bodily injury claims under the policy issued for the calendar year 1977.

84. As a result of Liberty Mutual's breach of its obligation to provide insurance coverage for asbestos-related bodily injury claims under the policy issued for the calendar year 1977, AWI has suffered damages for which it seeks an award of compensatory damages and interest.

\*                    \*                    \*

WHEREFORE, AWI respectfully requests that the Court enter judgment declaring that:

A.  Liberty Mutual is not entitled to reformation of either the deductibles or the aggregate limit provisions of the 1977-1981 policies;

B.  The deductible and aggregate limit provisions of the 1977-1981 policies do not apply to asbestos-related bodily injury non-products claims, *i.e.*, claims that are not within the products or completed operations hazards;

C.  For purposes of the per occurrence limits of the 1977-1981 policies, there is a separate occurrence for each person who claims to have suffered asbestos-related bodily injuries;

D.  Effective upon the exhaustion of the non-products coverage provided by Liberty Mutual's 1973-1976 policies (whenever that may be determined to have occurred), AWI's "coverage block," as that term is used in the Wellington Agreement, is expanded for amounts allocable to the non-products classification by one full year so that such coverage block would end on December 31, 1977;

E.  Liberty Mutual is not entitled to collect any additional retrospective premium, including without limitation any additional expense premium on asbestos-related bodily injury claims, under the 1977 and 1978 policies, even if additional losses are paid under those policies.

F.  Under the 1977-1981 policies, AWI has no obligation to request coverage from Liberty Mutual for amounts paid in connection with asbestos-related bodily injury products claims, *i.e.*, claims within the products or completed operations hazards, and Liberty Mutual has no right to pay any amounts in connection with asbestos-related bodily injury products claims against AWI in the absence of a request from AWI for coverage for such amounts;

G.  In particular, Liberty Mutual has no right to insist on paying amounts for asbestos-related products claims that are within the deductibles applicable to the 1977-1981 policies so that it can obtain reimbursement of the total amount paid within the deductibles plus 35 percent of the amount of the settlement or damages payments (in the case of the 1977-1980 policies), or the applicable percentage of the sum of the defense and settlement or damages payments set forth in Part VI of Endorsement No. 1A to the 1981 policy;

H.  Under the 1981 policy, Liberty Mutual is not entitled to any "Expense Premium on Asbestos Claims" in connection with amounts paid for asbestos-related non-products claims.

- 22 -

I.  AWI is entitled to a declaration of rights under the 1977-1981 policies in accordance with the rulings set forth or incorporated by reference in the Final Judgment that was entered at the conclusion of the Trial Phase of the Non-Products ADR.

J.  AWI is entitled to an award of compensatory damages and pre-judgment interest in amounts to be determined at trial as a result of Liberty Mutual's breach of its obligation to provide insurance coverage for asbestos-related bodily injury claims under the policy issued for the calendar year 1977.

K.  AWI is entitled to an award of costs, expenses, and fees (including attorneys fees) incurred in connection with this case;

L.  AWI is entitled to such other and further relief as the Court deems proper.


April 5, 2004                                     _____
                                                 William P. Skinner
                                                 S. William Livingston
                                                 Covington & Burling
                                                 1201 Pennsylvania Ave., N.W.
                                                 Washington, D.C. 20004
                                                 202-662-5470

                                                 Howard M. Klein
                                                 Conrad O'Brien Gellman & Rohn, P.C.
                                                 1515 Market Street, Sixteenth Floor
                                                 Philadelphia, PA 19102-1916
                                                 215-864-9600

## CERTIFICATE OF SERVICE

I, Frank R. Emmerich Jr., Esquire, do hereby certify that service of a true and correct copy of the foregoing First Amended Complaint for Declaratory Judgment and Damages was sent in the manner indicated to the following:

**VIA HAND DELIVERY**

Edward F. Mannino, Esquire
Jason A. Snyderman, Esquire
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103-7086

**VIA OVERNIGHT DELIVERY**

A. Hugh Scott, Esquire
John A. Nadas, Esquire
Choate, Hall & Stewart
53 State Street
Boston, MA 02109

Frank R. Emmerich Jr.

Date:   April 5, 2004