UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ARMSTRONG WORLD INDUSTRIES, INC. PERSONAL INJURY SETTLEMENT TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 02-CV-4360 |
| v. | ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

**JOINT CASE REPORT**

Plaintiff Armstrong World Industries, Inc. Personal Injury Settlement Trust (the "Trust")
and Defendant Liberty Mutual Insurance Company ("Liberty Mutual") submit this Joint Case
Report for the Initial Pretrial Conference scheduled for October 22, 2007.

A.     **Statement of the Case and Basis for Jurisdiction**

1.     **Joint Statement of the Case**

This is an asbestos-related insurance coverage action filed by Armstrong World
Industries, Inc. ("AWI") regarding its rights to coverage for asbestos-related claims under
comprehensive general liability insurance policies issued by Liberty Mutual to AWI for policy
periods from 1977 through 1981 (the "Policies"). Because of mounting asbestos-related
liabilities, AWI filed for bankruptcy in 2000. The Trust was created in 2006 and, through
operation of AWI's confirmed plan of reorganization, succeeded to AWI's asbestos-related
liabilities and AWI's rights arising under certain liability insurance policies, including the
Policies at issue here, with respect to liability for asbestos-related claims. In 2007, by agreement
among the parties, the Trust was substituted for AWI as the plaintiff in this case.

Pursuant to the First Amended Complaint, the Trust seeks damages and a declaration of the parties' rights and obligations regarding insurance coverage under the Policies for past, present, and future asbestos-related bodily injury claims that allegedly arise out of exposure to asbestos during the installation of, or other operations involving, asbestos-containing materials before AWI or its subsidiaries relinquished those materials (which the parties refer to as non-products bodily injury claims).

Liberty Mutual asserts that it does not owe such coverage and has filed counterclaims seeking declaratory relief, including, but not limited to, a finding that the Trust's claims are barred by the statute of limitations, a finding of reformation or rescission of the Policies based on alleged mutual mistake, and a declaration that certain provisions of the Policies exclude or significantly limit its liability to the Trust for such claims.

The parties have engaged in prior insurance litigation. The parties first were involved in a state court litigation (the "California Coordinated Litigation") commencing in 1980 over various issues related to insurance coverage for AWI's asbestos liabilities, which involved Liberty Mutual and other insurers. The parties also engaged in an alternative dispute resolution proceeding (the "ADR Proceeding" or the "ADR") commencing in 1996 under the Wellington Agreement.[1] The ADR concerned non-products coverage under policies issued by Liberty Mutual and other insurers. In 2002, the trial arbitrator awarded AWI non-products coverage for 74% of its asbestos bodily injury claims under 1973 through 1976 policies issued by Liberty Mutual and held that AWI's claim for insurance coverage under these policies was timely. In 2004, an ADR appellate panel reversed that award on statute of limitations grounds, without

---

[1] The Wellington Agreement (formally titled the Agreement Concerning Asbestos-Related Claims, dated June 19, 1985) is an agreement between insurers (including Liberty Mutual) and insureds (including Armstrong) regarding coverage for asbestos bodily injury claims.

reaching the merits of the trial arbitrator's other decisions.  In a separate action in this Court, the Trust has moved to vacate the appellate arbitration award in favor of Liberty Mutual, and Liberty Mutual has cross-moved to confirm that award.  *See* Case No. 04-CV-499.  The dispute in the present case deals with AWI's rights to insurance coverage for asbestos-related bodily injury claims under the 1977-1981 policies issued by Liberty Mutual.

Because the California Coordinated Litigation and the ADR Proceeding involved facts and issues relevant in this case, the parties anticipate that pertinent portions of the record in those prior matters will be used here.

### 2.    Basis for Jurisdiction

The parties agree that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) and § 2201 (declaratory judgments) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  The Trust's principal place of business is in Delaware.  (The Trust's predecessor, AWI, was a Pennsylvania corporation with its principal place of business in Lancaster, Pennsylvania.)  Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

### B.    <u>Statement of Causes of Action, Essential Elements of Each Cause of Action, and Relief Sought</u>

The following table lists the counts of both the First Amended Complaint ("Complaint") and the Counterclaim, and each of these counts is explained in greater detail following the table.

| Complaint | | Counterclaim | |
|---|---|---|---|
| *Count* | *Issue* | *Count* | *Issue* |
| 1 | Reformation | 1 | Completed operations |
| 2 | Number of occurrences | 2 | Statute of limitations |
| 3 | Expansion of the Wellington Coverage Block | 3 | Number of occurrences |
| 4 | Retrospective premium under 1977 and 1978 Policies | 4 | Reformation |
| 5 | Additional premium under 1977 to 1981 Policies | 5 | Estoppel from asserting more than 7% non-products claims |
| 6 | Additional rights under the 1977 to 1981 Policies | 6 | Non-existent or limited coverage for certain types of claims |
| 7 | Damages under the 1977 Policy | 7 | Expansion of the Wellington Coverage Block |

The parties' respective versions of the factual background for these issues are set forth succinctly in the First Amended Complaint and Counterclaim.[2]  What follows is a short statement of each issue, followed by a summary of each party's position.

      **1.**     **Reformation.**  Complaint Count 1 and Counterclaim Count 4 seek a declaration on the same issue:  whether the Policies' per-person deductible and aggregate limit provisions, which by their terms apply only to asbestos-related *products* bodily injury claims should be applied as written or reformed to apply also to asbestos-related *non-products* bodily injury claims.

---

[2] See First Amended Complaint ¶¶ 8, 37, 41, 45, 49, 54, 57, 63, 67, 71, and 74-77; Counterclaim ¶¶ 7, 10-11, 17-23, 29, 35-39, 45-51, 56, 58, and 63.

The Trust contends that these provisions are unambiguous, that the Wellington Agreement requires that they be applied "as written," and that there was no mutual mistake of fact regarding the clear provisions of the Policies. The Trust also asserts that Liberty Mutual improperly failed to classify claims as non-products bodily injury claims that they knew or should have known should be so classified, and misclassified such claims as product claims subject to aggregate limits. Finally, the Trust asserts that Liberty Mutual waived any reformation defense when it signed the Wellington Agreement, which provides that Liberty Mutual waived all defenses to coverage except those expressly reserved and which does not specify reformation as a reserved defense.

Liberty Mutual contends that these provisions should be reformed to apply to asbestos non-products bodily injury claims because, at the time the Policies were issued, both parties intended that the endorsement would apply to all asbestos claims and thus the language in the endorsement limiting it to products bodily injury claims was a "mutual mistake of expression." Alternatively, Liberty Mutual contends that these provisions should be reformed, or the Policies should be rescinded, because the parties contracted under a "mutual mistake of fact," namely that all the asbestos claims would be products bodily injury claims, and thus fall under the endorsement. Liberty Mutual denies that it misclassified any claim or waived its claim for reformation.

     **2.**    **Number of occurrences.** Complaint Count 2 and Counterclaim Count 3 seek a declaration on the same issue: whether each individual person's claim alleging asbestos-related bodily injury arises from a separate "occurrence" under the Policies, or whether all such individual claims arise from a single "occurrence." The resolution of this question will determine whether each individual's claim is separately subject to the per-occurrence limit in the

Policies of $1 million, or whether all of the individual claims collectively are subject to a single $1 million per-occurrence limit.

The Trust contends that each claim arises from a separate occurrence based on, *inter alia*: (i) the plain language of the Policies; (ii) Liberty Mutual's course of conduct throughout its defense of AWI against asbestos-related tort claims in the 1980's in treating each individual person's claim as a separate occurrence; (iii) Liberty Mutual's prior admissions, including Liberty Mutual's 1985 proposed written agreement that "each asbestos claim would be treated as a separate occurrence"; and (iv) Liberty Mutual's position in the ADR that there is no dispute on this issue.

Liberty Mutual contends that all claims constitute a single occurrence based on the plain language of the Policies, and the fact that all of the asbestos bodily injury claims against the Trust arise from a single, uninterrupted and continuing cause – AWI's manufacturing, distribution, sale, and installation of products containing asbestos to which the claimants were exposed.  Liberty Mutual believes that Pennsylvania case law clearly establishes that multiple claims arising from asbestos exposure constitute a single occurrence.  Liberty Mutual disputes the Trust's interpretation of the parties' 1985 agreement, and its alleged course of conduct.

**3.    Expansion of the Wellington Coverage Block.**  Complaint Count 3 and Counterclaim Count 7 both seek a declaration on the same issue:  whether AWI's "coverage block" under the Wellington Agreement can be expanded by the Trust to include just the non-products coverage of the 1977 policy, or whether the coverage block must be expanded to

include all of the coverage potentially afforded under the 1977 policy, including products coverage and completed operations coverage, in addition to non-products coverage.[3]

The Trust contends that AWI properly expanded its coverage block, which at that time ended on December 31, 1976, to include the non-products coverage of the 1977 Liberty Mutual policy.

Liberty Mutual asserts that the Wellington Agreement requires that any expansion of the coverage block must include all coverage potentially available under a Policy.

**4.      Retrospective premium under the 1977 and 1978 policies.**  In Complaint Count 4, the Trust seeks a declaration that no additional retrospective premiums (*i.e.*, additional premiums that the insurer can collect retroactively based on the policyholder's losses during the policy period) must be paid to Liberty Mutual for the 1977 and 1978 policies.

The Trust contends that, as of April 20, 1998, the parties had agreed upon a "final adjustment" for those Policies, which contractually terminated AWI's obligations to pay retrospective premiums under the 1977 and 1978 policies.

Liberty Mutual disputes the Trust's position and contends that it is entitled to retrospective premiums under the 1977 and 1978 policies to the extent there is coverage for asbestos claims under those policies.

**5.      Additional premium under the 1977 to 1981 policies.**  In Complaint Count 5, the Trust seeks a declaration that, under all of the Policies, Liberty Mutual cannot collect

---

[3] A "coverage block" is the group of insurance policies upon which an insured can seek coverage for asbestos tort claims under the terms of the Wellington Agreement.  When AWI signed the Wellington Agreement, AWI included the 1973-1976 Liberty Mutual policies in its "coverage block."

"additional" or "excess" premiums, as those terms are used in the Policies, for asbestos-related non-products claims.

The Trust contends that Liberty Mutual has no right to collect such premiums based on, *inter alia,* the plain language of the 1981 policy, which states that the "Expense Premium on Asbestos Claims" applies only to "products" bodily injury claims.

Liberty Mutual believes that, under the applicable policy provisions, it would be entitled to collect "additional" or "excess" premiums under the Policies on certain asbestos-related claims if coverage for those claims was found to exist.

**6.    Additional rights under the 1977 to 1981 policies.**  In Complaint Count 6, the Trust seeks a declaration as to the Trust's rights under the Policies to coverage for asbestos-related bodily injury claims, based on, in whole or in part, issues decided in the trial phase of the ADR.

Liberty Mutual cannot determine from this Count exactly what types of declarations the Trust is seeking, but states that (i) the trial phase of the ADR was vacated and reversed on appeal by the appellate ADR panel, and thus, findings made in the trial phase are moot, and (ii) in any event, under the Wellington Agreement, disputes regarding the 1977 through 1981 policies are not subject to resolution by binding arbitration.

**7.    Damages under the 1977 Policy.**  In Complaint Count 7, the Trust alleges that Liberty Mutual has breached its contractual obligation to provide coverage for asbestos claims under the 1977 Policy, and the Trust accordingly seeks compensatory damages.

Liberty Mutual denies that it has breached its obligations under the 1977 Policy, and disputes that the Trust is entitled to damages.

8. **Completed operations.** In Counterclaim Count 1, Liberty Mutual seeks a declaration that all asbestos claims against the Trust that arise from a claimant's alleged exposure to asbestos during an asbestos installation (or removal) operation of AWI or its subsidiaries must fall within the Policies' "completed operations" hazard. If this is the case, then all asbestos installation claims against the Trust will be subject to the "aggregate limits" for "completed operations" claims under the Policies, as opposed to being "non-products" claims for which there are no aggregate limits.

Liberty Mutual contends that, under the plain language of the Policies, all installation claims fall within the completed operations hazard because all of the asbestos operations of AWI or its subsidiary that gave rise to those claims were completed long before any of the Policies was issued. Hence, the bodily injury during each Policy period which triggers coverage under a Policy necessarily occurred after the operation that gave rise to the injury had been completed. Liberty Mutual asserts that all relevant case law supports this interpretation of the Policies. Liberty Mutual believes that, because the policy language is clear and unambiguous, no extrinsic evidence is relevant to this question.

The Trust disputes Liberty Mutual's interpretation of the "completed operations" hazard. That interpretation, which was rejected by the trial arbitrator, is contradicted by (1) the language of the Policies; and (2) Liberty Mutual's consistent course of conduct, which Pennsylvania law recognizes as persuasive evidence of the meaning of a contract. In particular, Liberty Mutual has consistently acknowledged the availability under their policies of non-products coverage for claims involving alleged exposure during operations (*e.g.*, installation) under all of its policies, regardless of when the initial exposure occurred.

9

9.      **Statute of limitations.**  In Counterclaim Count 2, Liberty Mutual seeks a declaration that the statute of limitations bars the Trust's claims for non-products coverage under the Policies.

Liberty Mutual contends that because the Trust's predecessor, AWI, first believed it had such claims in 1984, first sought to assert such claims against Liberty Mutual in 1985, was told by the court to bring those claims in another action, but failed to do so until this suit was filed in 2002, the Trust is now barred by the statute of limitations from pursuing those claims.  As the ADR appellate panel found, by 1986 Liberty Mutual had repudiated any obligation to provide non-products coverage for AWI's asbestos claims, thus triggering the running of the four-year statute of limitations.

The Trust contends that its claims are timely.  First, as the trial arbitrator found, Liberty Mutual, by its admissions and course of conduct, waived or is estopped from raising the statute of limitations.    Second, AWI first sought a declaration of coverage under the Policies when it filed the ADR in April 1996; as of April 1992, Liberty Mutual had not repudiated its non-products coverage obligations under the Policies, and therefore the statute of limitations had not been triggered.  Third, the 1977 policy was not added to AWI's coverage block until 2000, and the 1978-1981 policies have not yet been added to the coverage block.  Accordingly, these policies have not yet been triggered and the statute of limitations has not begun to run.

10.      **Estoppel from asserting more than 7% non-products claims.**  In Counterclaim Count 5, Liberty Mutual seeks a declaration that the Trust is estopped from asserting that more than 7% of the asbestos claims against it are non-products bodily injury claims.

Liberty Mutual bases its claim for this relief on:  AWI's long-standing practice, from 1973 through 1984, of characterizing all of the claims against it as products bodily injury claims;

and AWI's written and oral assurances to Liberty Mutual in 1985 that only 7% of the asbestos

claims against it were non-products bodily injury claims, on which Liberty Mutual detrimentally

relied in agreeing to enter into the Wellington Agreement at AWI's urging in 1985.

The Trust contends that this Court should reject Liberty Mutual's estoppel argument, as

the trial arbitrator did.  Liberty Mutual had the duty properly to classify claims submitted under

its policies, yet consistently misclassified AWI's claims as products bodily injury claims subject

to aggregate limits when it knew that a large portion were or could be non-products bodily injury

claims.  AWI's statement in 1985 regarding the 7% figure related solely to a limited number of

past claims, and not to present or future claims.

11.    **Non-existent or limited coverage for certain types of claims.**  In Counterclaim

Count 6, Liberty Mutual seeks a declaration that seven specific types of asbestos claims against

the Trust are not covered by the Policies, or are covered only to a limited extent.[4]  Liberty

Mutual asserts that the Policies' provisions preclude or limit coverage for these types of

individual claims.

The Trust disputes Liberty Mutual's characterizations of AWI's past and future claims

for coverage, and disputes Liberty Mutual's interpretation of the Policies.

### C.    Defenses and Essential Elements of Each Affirmative Defense

1.    **Liberty Mutual's Defenses to the Trust's Complaint.**  Liberty Mutual denies

the factual allegations and disagrees with the legal arguments that form the basis of the

Complaint and asserts the following affirmative defenses:

---

[4]  The seven types of claims are those involving:  (1) post-1957 installation of an AWI product;
(2) post-1957 installation of another manufacturer's product; (3) medically unimpaired
claimants; (4) inadequate product identification or medical evidence; (5) AWI employees;
(6) lack of tender to or cooperation with Liberty Mutual; or (7) unreasonable settlements or
settlements not presented to Liberty Mutual for approval.

(a)     <u>Estoppel</u>.  The elements of estoppel are an inducement to act and a

justifiable reliance on that inducement.  The Trust is estopped from raising some or all of its

claims and arguments because its predecessor, AWI, induced Liberty Mutual to enter into

agreements by making representations on which Liberty Mutual relied to its detriment, including

but not limited to, the representations that no more than 7 % of asbestos claims were non-

products bodily injury claims, and that the asbestos deductible endorsement was intended to

apply to all asbestos claims.  Aff. Def. 1.

(b)     <u>Waiver</u>.  Waiver is a "voluntary and intentional abandonment or

relinquishment of a known right" and "may be established by a party's undisputed acts or

language so inconsistent with a purpose to stand on the contract provisions as to leave no

opportunity for a reasonable inference to the contrary."  *RCN Telecom Services of Philadelphia,*

*Inc. v. Newtown Tp., Bucks County*, 848 A.2d 1108, 1113 (Pa. Cmwlth. 2004).  The Trust, which

is bound by the conduct of its predecessor, AWI, has waived some or all of its claims and

arguments, including but not limited to its claims that more than 7 % of the claims against it are

non-products bodily injury claims, by continually engaging in conduct that is inconsistent with

those claims and arguments.  Aff. Def. 4.

(c)     <u>Time Bar.</u>  The Trust's claims are time-barred by the Pennsylvania 4-year

statute of limitations for contract claims, or alternatively, by the equitable doctrine of laches.

Aff. Defs. 2 and 3.

(d)     <u>Violation of policy terms and the Wellington Agreement</u>.  The Trust's

claims are barred by its (or AWI's) failure to satisfy conditions precedent for coverage under the

Policies, its (or AWI's) violation of terms and conditions of the Policies, and its (or AWI's)

assertion of claims and coverage positions inconsistent with the Wellington Agreement.  Aff.

Defs. 8, 9, 13, 14, and 15.  To the extent that the Trust (or AWI) has settled claims before properly adding the Policies to its Wellington Agreement coverage block, the Policies do not cover such settlements.  Aff. Def. 11.

        (e)    <u>Unripeness</u>.  The Trust's claim for damages in Count 7 is barred because the Trust has not properly added the 1977 Policy to its coverage block under the Wellington Agreement and thus is not yet entitled to any payment under the 1977 Policy.  In addition, prior to filing its claim for damages, AWI had not tendered any claims to Liberty Mutual for payment under the 1977 Policy, and thus Liberty Mutual cannot have breached any payment obligation. Aff. Defs. 10 and 12.

        (f)    <u>Other Settlements</u>.  To the extent the Trust (or AWI) has settled with other insurers concerning coverage for asbestos bodily injury claims, the Trust's claim for coverage under the Liberty Mutual Policies must be reduced by the applicable limits of, or coverage under the policies issued by other settling insurers.  Aff. Def. 16.

        (g)    The Trust's claims or part of them may be barred by accord and satisfaction, failure to exhaust required arbitration, and failure of consideration.  Aff. Defs. 5-7.

        (h)    Liberty Mutual reserves the right to raise additional defenses.

    **2.**    **The Trust's Defenses to Liberty Mutual's Counter-Complaint.**  The Trust denies the factual allegations and disagrees with the legal arguments on which Liberty Mutual bases its counterclaims and asserts the following affirmative defenses:

        (a)    <u>Waiver</u>.  Waiver is a "voluntary and intentional abandonment or relinquishment of a known right" and "may be established by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary."  *RCN Telecom Services of Philadelphia,*

*Inc. v. Newtown Tp., Bucks County*, 848 A.2d 1108, 1113 (Pa. Cmwlth. 2004). Liberty Mutual waived some or all of its claims and arguments, including but not limited to its claims that all asbestos-related claims are products bodily injury claims, that all asbestos-related claims constitute one occurrence, and that it is entitled to retrospective premiums on certain policies, by continually engaging in conduct that is inconsistent with those claims and arguments.

(b)    Estoppel. The elements of estoppel are an inducement to act and a justifiable reliance on that inducement. Liberty Mutual is estopped from raising some or all of its claims and arguments because it failed to raise them as arguments, claims, defenses, or affirmative defenses in prior communications with AWI or in prior proceedings where it would have been necessary and appropriate to do so. As just one example, Count 7 of Liberty Mutual's counterclaim is precluded by estoppel because Liberty Mutual did not promptly explain the basis for its objection to the manner in which AWI expanded its coverage block by adding the non-products coverage of the 1977 Policy. AWI was prejudiced by Liberty Mutual's delay because AWI was deprived of the opportunity to cure any alleged deficiencies in the expansion of the coverage block.

(c)    Prior conduct and agreements. Counts 3 and 4 of Liberty Mutual's counterclaims are barred by Liberty Mutual's prior consistent course of conduct and by written and oral agreements between AWI and Liberty Mutual.

(d)    Failure of consideration/breach of insurance policy provisions. Count 6 of Liberty Mutual's counterclaim is precluded, in whole or in part, because Liberty Mutual breached the Policies by wrongfully denying coverage for asbestos-related bodily injury claims.

(e)    The Trust reserves the right to raise additional defenses.

### D.    Rule 26(a)(1) Disclosures

Given the parties' prior involvement in extensive litigation and an ADR that involved

facts and issues related to those presented in this case, the parties have agreed to waive the initial

disclosure requirements of Rule 26(a)(1) of the Federal Rules of Civil Procedure.

### E.    Necessary Parties

At this time, no additional parties are necessary to this action.

### F.    Status of Settlement Negotiations

The parties have conducted initial settlement discussions, will continue to discuss the

possibility of settlement, and will apprise the Court of further developments.

### G.    List of Counsel that will Attend the Scheduling Conference

Representing the Trust will be:

- Jerome C. Randolph and Mark A. Packman of Gilbert Randolph LLP; and

- Stephen A. Madva and Steven E. Pachman of Montgomery, McCracken, Walker & Rhoads, LLP.

Representing Liberty Mutual will be:

- A. Hugh Scott and Kathleen Cloherty Henry of Choate, Hall & Stewart LLP;

- John C. Sullivan of Post & Schell, P.C.; and

- Cindy Koehler of Liberty Mutual Insurance Company.

### H.    Discovery Schedule, Procedural and Legal Disputes, and Discovery Plan

#### 1.    Competing Proposals for Discovery Schedules

The parties disagree as to whether this case should be bifurcated into two phases.

Liberty Mutual believes that the estimation of (i) the number or value of asbestos claims

against AWI and (ii) the percentage of asbestos claims against AWI that are "non-products"

claims (the "estimation issues") should be deferred until the Court has determined whether non-

products coverage exists under the Policies. These two quantitative estimates will be the result of dueling sophisticated, complex and costly expert analyses, *none* of which will be necessary if Liberty Mutual prevails on any of its multiple defenses to coverage (such as statute of limitations, which the ADR Appellate panel found persuasive). Estimation is not a small task: between the ADR and its bankruptcy case, AWI paid several experts more than $5.6 million for years of quantitative estimation work, none of which is relevant to the present case. Fed. R. Civ. P. 42(b) provides for separate trials "when . . . conducive to expedition and economy." Phasing this case will allow the parties and the Court to focus their efforts on whether coverage exists for the AWI claims, and potentially avoid the burdensome effort and expense of the complex quantitative estimation process.

The Trust contends that the evidence in this case is in fact intertwined and cannot be separated into two phases. For example, the Trust will offer testimony from former AWI employees that AWI's involvement with asbestos-containing materials consisted primarily of contracting, which gives rise to non-products bodily injury claims. The Trust will bolster this testimony with expert statistical evidence that AWI derived significant revenues from contracting and that the bulk of its tort liability arose from its contracting activities. Moreover, the percentage of asbestos claims against AWI that are non-products bodily injury claims bears directly on Liberty Mutual's knowledge and good faith when it misclassified such claims as "products" bodily injury claims subject to aggregate limits. Liberty Mutual's attempt to prevent the Trust from presenting this evidence as proof of Liberty's liability will damage the Trust's ability to present its case-in-chief, will require repetitive trials with the same witnesses and evidence, and will substantially delay resolution of the case.

The parties attach alternative proposed discovery plans as Exhibit A hereto. Under those plans, discovery would be completed on the following dates:

**1.      Schedule Assuming No Bifurcation**

- All discovery completed: 15 months after entry of the Rule 16 Conference Order

**2.      Schedule Assuming Bifurcation**

- Discovery completed except for estimation issues: 13 months after entry of the Rule 16 Conference Order

- Discovery re estimation issues would take place subsequent to a ruling on whether coverage exists under a plan to be set at that time.

Liberty Mutual requests that the Court establish an expedited briefing schedule regarding the bifurcation issue. The Trust opposes Liberty's request and respectfully requests that this issue be resolved at the Initial Pretrial Conference.

**2.      Procedural and Legal Disputes, and Discovery Plan per Fed. R. Civ. Rule 26(f)**

At their initial Fed. R. Civ. P. Rule 26(f) conferences, the parties have discussed a proposed discovery plan and related issues, as required by the rule. The parties address those matters in the following subsections, in order to inform the Court of the parties' agreements and to seek guidance from the Court on matters as to which the parties disagree.

**a.      Subjects of Discovery (Rule 26(f)(2)).** Although the parties do not agree that discovery will be granted on each topic, the parties anticipate that discovery may be sought on, *inter alia*, the following topics:

- History, negotiation, drafting, and meaning of Liberty Mutual insurance policies issued to AWI, the Wellington Agreement, and other agreements or communications between the parties.

- History of AWI's business, including the scope of its contracting operations pertaining to asbestos.

- Relevant aspects of the asbestos tort system and of the nature of asbestos and asbestos-related diseases.

- The magnitude of AWI's/the Trust's current and future liability for asbestos-related claims, including non-products bodily injury claims.

- The parties' historical course of conduct with respect to (a) insurance policies issued by Liberty Mutual to AWI, (b) the negotiation, signing, and implementation of the Wellington Agreement, (c) the handling of asbestos-related claims, and (d) the handling of other claims.

- The parties' positions and discovery taken in the California Coordinated Litigation and ADR Proceeding.

- Liberty Mutual's policies issued to other policyholders and its course of conduct with respect to those policies and other policyholders' coverage and defense claims.

- Other insurers' course of conduct regarding insurance policies, the Wellington Agreement, and asbestos-related claims involving AWI or the Trust.

- The circumstances regarding the drafting of the language of the insurance policies at issue dealing with non-products coverage.

- Other topics that may become relevant.

The parties expressly reserve the right to oppose discovery on any of the foregoing topics and to seek discovery on additional topics.

      **b.**      **Discovery of Electronically Stored Information (Rule 26(f)(3)).**  The parties agree to share the costs of having produced material scanned and made OCR-readable. Depending on specific vendor proposals, the parties may agree to share the costs of having produced material coded by computer for objective information (*e.g.*, sender, recipient, date, subject line, etc.).

      **c.**      **Inadvertent Disclosure of Privileged Information (Rule 26(f)(4)).**  The parties agree that allegedly privileged or protected material that is inadvertently produced will be returned on demand pending resolution of the claim of privilege.  The parties further agree that the fact of inadvertent production will not be raised as a basis for finding waiver of any privilege

or protection, and a party challenging the claim of privilege will not argue that the inadvertent production constitutes or supports a waiver of any privilege or protection that otherwise might exist.

       **d.**      **Limitations on Discovery (Rule 26(f)(5)).**  During the California Coordinated Litigation and the ADR Proceeding, a substantial body of documents was produced and testimony was given which may relate to the issues in this case.  Accordingly, the parties have reached agreement as to how the record of those cases will be used in this litigation (*see* Exhibit C), as well as on other limitations on discovery:

- There shall be no limit on the number of fact depositions.

- Depositions will be videotaped at the request of either party.

- The parties will accommodate elderly or infirm witnesses regarding the length of any given deposition session.

- The parties will not be required to produce documents that AWI and Liberty Mutual produced to each other in the California Coordinated Litigation or the ADR Proceeding, except to the extent that, in the ADR Proceeding, Liberty Mutual did not receive copies of documents that AWI produced to other insurers or AWI did not receive copies of documents that Liberty Mutual produced to other insurers.

- Each party will serve new document requests and, if responsive documents have already been produced, the responding party will represent the extent to which the documents were produced in the prior proceedings, will identify such documents by bates range where possible, and, where appropriate, will make necessary supplemental productions.

- The parties will execute a written agreement under which they will release all materials disclosed by AWI and Liberty Mutual in the ADR Proceeding from: (1) the confidentiality protections and restrictions of the Confidentiality Stipulation entered in that proceeding (the "ADR Confidentiality Stipulation"), and (2) the Certification Regarding the Confidentiality Stipulation entered previously in the present case, so that such materials may be used in connection with this case, except that (i) AWI's privileged, protected, and defense-strategy material from underlying litigation and (ii) Liberty Mutual's material regarding other policyholders, shall remain subject to the protections of the ADR Confidentiality Stipulation.  Each of the parties, as well as AWI, may redesignate

materials used in this proceeding as confidential pursuant to the Stipulation Regarding Confidentiality attached hereto as Exhibit B.

       **e.**        **Other Orders to be Entered (Rule 26(f)(6)).**  As noted in the preceding paragraph, the parties have reached agreement as to how testimony from the California Coordinated Litigation and the ADR Proceeding may be used in this litigation, which they have memorialized in a "Stipulation And Order Regarding Use Of Prior Testimony" attached hereto as Exhibit C.  The parties request that the Court enter Exhibit C as an Order.

       In addition, the parties have reached a confidentiality agreement under which each party may designate certain materials disclosed in discovery as "confidential" material that shall be used only for purposes of this case subject to the provisions of that stipulation.  The parties have memorialized that agreement in a "Stipulation Regarding Confidentiality" attached hereto as Exhibit B.  The parties will execute and file Exhibit B, but are not requesting that the Court enter Exhibit B as an Order.

Respectfully submitted this 11th day of October, 2007,

FOR THE TRUST:                                    FOR LIBERTY MUTUAL:


   */s/ Stephen A. Madva*                            */s/ John C. Sullivan*
Stephen A. Madva                                  John C. Sullivan
Steven E. Pachman                                 Kathleen K. Kerns
Carmon M. Harvey                                  Stacey Z. Jumper
MONTGOMERY, MCCRACKEN,                            POST & SCHELL, P.C.
   WALKER & RHOADS, LLP                           Four Penn Center
123 South Broad Street                            1600 John F. Kennedy Boulevard
Philadelphia, PA 19109                            Philadelphia, PA 19103-2808
Tel:  (215) 772-1500                              Tel:  (215) 587-1000
Fax:  (215) 772-7620                              Fax:  (215) 587-1444




   */s/ Jerome C. Randolph*                          */s/ A. Hugh Scott*
Jerome C. Randolph                                A. Hugh Scott
Mark A. Packman                                   Kathleen Burdette Shields
Alyson A. Foster                                  Kathleen Cloherty Henry
GILBERT RANDOLPH LLP                              CHOATE, HALL & STEWART LLP
1100 New York Ave. NY, Suite 700                  Two International Place
Washington, DC 20005                              Boston, MA 02110
Tel:  (202) 772-2200                              Tel:  (617) 248-5000
Fax:  (202) 772-3333                              Fax:  (617) 248-4000

**Exhibit A to Joint Case Report**

*Armstrong Settlement Trust v. Liberty Mutual*
**Proposed Case Schedule for Unbifurcated Case**

| Time Period (measured from entry of Rule 16 Conference Order) | Case Deadline |
|---|---|
| Waived by parties' agreement | Rule 26(a)(1) initial disclosures |
| 7 months | Case-in-chief expert reports that contain affirmative estimations of number or value of asbestos claims, or the percentage of asbestos claims that are "non-products" claims (the "estimation issues") |
| 8 months | Designation of rebuttal experts who will respond to estimation issues |
| 12 months | Rebuttal expert reports responding to estimation issues<br><br>Case-in-chief expert reports on non-estimation issues |
| 14 months | Rebuttal expert reports on non-estimation issues<br><br>Fact discovery completed on all issues |
| 15 months | Expert discovery and depositions completed<br><br>*ALL DISCOVERY COMPLETED* |
| 17 months | Deadline for filing dispositive motions, although any party may file dispositive motions at any time during the discovery period |
| One month after decision on dispositive motions, or if no motions filed, 2 months after close of expert discovery | Final pretrial conference |

*Armstrong Settlement Trust v. Liberty Mutual*
**Proposed Case Schedule for Bifurcated Case**

| Time Period (measured from entry of Rule 16 Conference Order) | Case Deadline |
|---|---|
| Waived by parties' agreement | Rule 26(a)(1) initial disclosures |
| 10 months | Case-in-chief expert reports, excluding estimation issues* |
| 11 months | Fact discovery completed, excluding estimation issues |
| 12 months | Rebuttal expert reports, excluding estimation issues |
| 13 months | Expert discovery and depositions completed, excluding estimation issues<br><br>*ALL DISCOVERY COMPLETED* |
| 14 months | Deadline for filing dispositive motions, excluding estimation issues, although any party may file dispositive motions at any time during the discovery period |
| One month after decision on dispositive motions, or if no motions filed, 2 months after close of expert discovery | Final pretrial conference re all matters except estimation issues |
| Two weeks following entry of judgment on coverage issues (if needed) | Parties to submit to Court proposed schedule for addressing estimation issues, to be followed by scheduling conference with the Court |

\* The term "estimation issues" is defined on the preceding table.

**Exhibit B to Joint Case Report**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS PERSONAL INJURY SETTLEMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 02-CV-4360 |

## STIPULATION REGARDING CONFIDENTIALITY

WHEREAS Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust (the "Trust") and Liberty Mutual Insurance Company ("Liberty Mutual"), and Reorganized Armstrong World Industries, Inc. ("Reorganized Armstrong") (the "Parties") each recognize that discovery in this case may call for the disclosure of information which the disclosing Party may believe to be of a confidential, sensitive, or proprietary nature, and the public disclosure of which could adversely affect the disclosing Party or violate a binding confidential undertaking of a Party, and

WHEREAS the Parties wish to ensure that such information (i) is not used for any purpose other than the above-captioned litigation, and (ii) is not made public or otherwise disseminated except as provided in this stipulation;

IT IS HEREBY STIPULATED AND AGREED by and among the Trust, Liberty Mutual, and Reorganized Armstrong that:

1.      If a Party believes in good faith that any discovery it provides in this case (including documents, interrogatory answers, or depositions (or portions thereof)) contains confidential, sensitive, or proprietary information, the public disclosure of which could adversely affect the producing Party or violate a binding confidential undertaking of a Party, the producing Party may designate such material as "Confidential."

2.      Materials designated as "Confidential" will be used only for purposes of this case, and will not be disclosed beyond the Parties themselves, counsel for the Parties, deponents testifying in this case, court reporters and other persons engaged in preparing transcripts of depositions, the Parties' consultants retained for purposes of this case, the Parties' expert witnesses retained for purposes of this case, other vendors employed by the Parties in connection with this case, and Liberty Mutual's reinsurers, who shall maintain the confidentiality of such materials and not further disclose them, except as provided in paragraph 3 below.

3.      Before any Party discloses in court filings or court proceedings materials that have been designated by another Party as "Confidential," the Party who received those materials will give all other Parties notice of the materials that it wishes to disclose.  The notice will be sufficient to permit the Party who designated the materials "Confidential," or any other Party, to move for a protective order from the Court and obtain a ruling on that motion in advance of any public disclosure of the materials.  Alternatively, the Party seeking to disclose materials that have been designated "Confidential" in court filings or court proceedings may file them under seal, pursuant to the Court's procedures therefore.

4.      Notwithstanding this stipulation, each Party reserves the right to seek a protective order from the Court for any material requested or produced in discovery in this case.

Dated: _____ ____, 2007

          ARMSTRONG WORLD INDUSTRIES, INC.
              ASBESTOS PERSONAL INJURY
              SETTLEMENT TRUST

By its counsel,

_____

Stephen A. Madva
Steven E. Pachman
Carmon M. Harvey
MONTGOMERY, MCCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Tel: (215) 772-1500
Fax: (215) 772-7620

_____

Jerome C. Randolph
Mark A. Packman
Alyson A. Foster
GILBERT RANDOLPH LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Tel: (202) 772-2200
Fax: (202) 772-3333

LIBERTY MUTUAL INSURANCE
    COMPANY

By its counsel,

_____

John C. Sullivan
Kathleen K. Kerns
Stacey Z. Jumper
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103-2808
(215) 587-1000

_____

A. Hugh Scott
Kathleen Burdette Shields
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
(617) 248-5000

REORGANIZED ARMSTRONG WORLD
    INDUSTRIES, INC.

By its counsel,

_____

William P. Skinner
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
(202) 662-6000

**Exhibit C to Joint Case Report**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, ) ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 02-CV-4360 |
| LIBERTY MUTUAL INSURANCE COMPANY, ) | |
| Defendant. ) | |

<u>**STIPULATION AND ORDER REGARDING USE OF PRIOR TESTIMONY**</u>

WHEREAS Armstrong World Industries, Inc. ("AWI") and Liberty Mutual Insurance Company ("Liberty Mutual") were parties to the civil action captioned *In re Asbestos Insurance Coverage Cases*, Judicial Coordination Proceeding No. 1072 (filed in San Francisco Superior Court, California, in 1980) (the "California Coordinated Litigation");

WHEREAS AWI and Liberty Mutual were also parties to an arbitration conducted by the Center for Public Resources Institute for Dispute Resolution captioned *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Company, et al.*, commencing in 1996 (the "ADR Proceeding");

WHEREAS, in both the California Coordinated Litigation and in the ADR Proceeding, discovery was taken, and witnesses testified, on matters that may be relevant to the issues in this case;

WHEREAS the Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust (the "Trust") has been substituted for AWI as plaintiff in this case; and

WHEREAS the Trust and Liberty Mutual have reached certain agreements concerning the use of prior testimony from the California Coordinated Litigation and the ADR Proceeding in an attempt to streamline the discovery and reduce expense for this case,

IT IS HEREBY STIPULATED AND AGREED by and among the Trust and Liberty Mutual that:

1.    Any deposition, trial, or hearing testimony given by AWI, Liberty Mutual, or any of their officers, employees or agents in either the California Coordinated Litigation or in the ADR Proceeding ("prior testimony") can be used in this case in the same manner as if such testimony had been given in a deposition taken in this case.

2.    Any witness who gave prior testimony will be deemed to be unavailable for trial testimony for purposes of Fed. R. Civ. P. 32(a)(3).

3.    Subject to the application of the Federal Rules of Civil Procedure, any witness who gave prior testimony may be deposed again in this case, for a maximum of seven hours.

4.    Subject to the application of the Federal Rules of Civil Procedure, any witness who gave prior testimony may be called as a witness at the trial of this case.

5.    The parties reserve all other rights with respect to all other materials, testimony, or documentary record from the California Coordinated Litigation or the ADR Proceeding.

Dated:  _____ ___, 2007

ARMSTRONG WORLD INDUSTRIES, INC.
   ASBESTOS PERSONAL INJURY
   SETTLEMENT TRUST

By its counsel,

_____

Stephen A. Madva
Steven E. Pachman
Carmon M. Harvey
MONTGOMERY, MCCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Tel:  (215) 772-1500
Fax:  (215) 772-7620

_____

Jerome C. Randolph
Mark A. Packman
Alyson A. Foster
GILBERT RANDOLPH LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Tel:  (202) 772-2200
Fax:  (202) 772-3333

3

LIBERTY MUTUAL INSURANCE
   COMPANY

By its counsel,

_____
John C. Sullivan
Kathleen K. Kerns
Stacey Z. Jumper
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103-2808
(215) 587-1000


_____
A. Hugh Scott
Kathleen Burdette Shields
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
(617) 248-5000


SO ORDERED:


_____            Dated: _____
Honorable R. Barclay Surrick
United States District Judge

4